UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Serendipity Morales,

    Plaintiff,

    v.                                        Civil Action No. 5:17–cv–124-gwc-jmc

Alexander N. Burke,
Barry Joseph MacKenzie,
Chad Newton,

    Defendants.

## REPORT AND RECOMMENDATION
(Doc. 44)
## AND ORDER
(Doc. 59)

Plaintiff Serendipity Morales, a prisoner proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against Defendants Chad Newton and Barry Joseph MacKenzie, two former Southern State Correctional Officers, as well as Defendant Alexander Burke,[1] a Bennington County Deputy State's Attorney, all in their individual capacities. (Doc. 19 at 2, ¶ 1.) Morales alleges in her Amended Complaint that, while in the custody of the Vermont Department of Corrections (DOC), she provided legal assistance to five inmates facing pending criminal charges and that, to retaliate for that legal assistance, Burke directed Newton and MacKenzie to assault and batter her in violation of her First Amendment rights and her right to be free of discrimination based on her self-identification as "female, gay,

---

[1] Previously, the undersigned Magistrate Judge issued a Report and Recommendation recommending that the Court dismiss Morales's claims against Burke, without prejudice. (Doc. 47.) The Court has not yet considered that Report and Recommendation.

mentally ill, Puerto Rican, and transgender." (*Id.* at 2, ¶¶ 1, 5.) Morales seeks monetary damages in the form of compensatory and punitive damages, and any additional relief the Court may deem appropriate. (*Id.* at 2, ¶ 1; *id.* at 3–4, ¶¶ 4, 5.)

Presently before the Court is Newton's Motion for Summary Judgment,[2] which he filed instead of an Answer. (*See* Doc. 44 at 1.) In the motion, Newton argues that Morales failed to exhaust her administrative remedies, as required by the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. 104-134, § 803(d), 110 Stat. 1321-71 (1996) (codified as 42 U.S.C. § 1997e). (*Id.* at 5.) Morales opposes Newton's motion. (*See generally* Doc. 49.) Also pending before the Court is Morales's Motion to Appoint Counsel. (Doc. 59.)

Concluding that the record contains material questions of fact regarding Morales's efforts to exhaust her administrative remedies, I recommend that Newton's motion for summary judgment be DENIED. (Doc. 44.) Further, for the reasons set forth below, Morale's Motion to Appoint Counsel (Doc. 59) is DENIED.

## **Factual and Procedural Background**

The facts in this case are primarily drawn from Morales's Amended Complaint (Doc. 19), and the documents submitted in support of her pleadings.

---

[2] Morales encountered difficulties serving Defendants Newton and MacKenzie, necessitating an order from this Court allowing Morales limited discovery for the purpose of ascertaining any addresses associated with Newton and Mackenzie. (Doc. 34.) After conducting limited discovery, Morales determined that she had been unable to locate MacKenzie because she incorrectly believed that his full name was Shane Mackenzie. After discovering that his correct name was Barry Joseph MacKenzie, Morales filed a Motion to Amend Named Defendant (Doc. 64), which this Court granted. (Doc. 66.) Based on this new information, Morales is presently attempting to serve MacKenzie; however, service has not been completed, so the Court lacks personal jurisdiction over MacKenzie. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

2

(Docs. 7-1–7-8.) As required at this stage of the proceedings, the Court views the disputed material facts in the light most favorable to Morales.

I.      DOC Offender Grievance System

Directive 320.01 governs the DOC offender grievance system and was in place during the time relevant to Morales's Complaint. (Doc. 45-1 at 1, ¶¶ 2–4); *see also* Vt. Dep't of Corr., Agency of Hum. Servs., Directive 320.01, http://corrections.vermont.gov/about/policies/rpd/correctional-services-301-550/301-335-facilities-general/320.01.pdf. Directive 320.01 sets forth a four-tiered process beginning with an inmate submitting "Grievance Form #1, Informal Complaint & Plan for Resolution Form." (*See* Doc. 45-1 at 1, ¶ 5); Directive 320.01(7). If a plan to resolve the informal complaint is not agreed upon within 48 hours, the inmate may then proceed to the formal grievance process. *See* Directive 320.01(7)(a)(vi). The first step of the formal grievance process is filing "Grievance Form #2, Offender/Inmate Grievance Submission Form." (*See* Doc. 45-1 at 1, ¶ 6.) The DOC facility staff must then investigate and provide the inmate with a resolution within 20 business days. (*Id.*); *see also* Directive 320.01(10)(a)(vii)–(xii). If the inmate is unsatisfied with the resolution, the inmate may then appeal that decision using "Grievance Form #5, Decision Appeal to Corrections Executive" and then, if the inmate remains unsatisfied, he or she may seek relief from the DOC Commissioner through "Grievance Form #7, Decision Appeal to Commissioner." Directive 320.01(15)(a), (b). There are no further administrative appeals after the DOC Commissioner. Directive 320.01(15)(b)(iiii).

## II. Morales's Grievances Against Newton

Morales is an inmate in the custody of the DOC. (Doc. 19 at 2, ¶ 1.) She identifies as "female, gay, mentally ill, Puerto Rican, and transgender." (*Id.*) Despite lacking a law license or formal legal training, Morales assists other prisoners with their legal proceedings. (*Id.*) The DOC regulations allow so-called "jailhouse layers" like Morales to communicate with other inmates "as long as the Superintendent or designee knows the [jailhouse lawyer] customarily offers legal advice to other inmates." *See* Vt. Dep't of Corr., Agency of Human Servs., Directive 409.05 at 8, ¶ 7(b)(iii) (2010), http://www.doc.state.vt.us/about/policies/rpd /correctional-services-301-550/401-500-programs-security-and-supervision/409-05- inmate-mail-publications-and-audio-video-regulations.

From approximately December 2015 to January 2016, Morales "assisted five prisoners with respect to having drafted, filed, and litigated *pro se* pretrial pleadings with respect to charged criminal offenses levied against them by Burke in Bennington Criminal Division." (Doc. 19 at 2, ¶ 1.) While Morales was providing this legal assistance, she was incarcerated in Marble Valley Regional Correctional Facility. (*Id.*) At some time in January 2016, she was transferred from Marble Valley Regional Correctional Facility to Southern State Correctional Facility (SSCF), where Defendants Newton and MacKenzie were employed as correctional officers. (*Id.* at 3, ¶ 3.)

At approximately the same time that Morales was transferred, Burke filed an information against Morales charging her with six counts of unauthorized practice of law in violation of Vt. Stat. Ann. tit. 4, § 901, and Vermont Administrative Order

4

No. 41, § 2. (*Id.* at 3–4, ¶ 4); *see also In re Morales*, 2016 VT 85, 202 Vt. 549, 151 A.3d 333. On August 5, 2016, the Vermont Supreme Court issued an opinion concluding that the multiple counts of unauthorized practice of law were not supported by probable cause and the Supreme Court dismissed the information. *In re Morales*, 2016 VT 85, ¶ 30. Subsequently, Morales alleges that, on November 8, 2016, Newton and MacKenzie entered Morales's jail cell and assaulted and battered her (*see* Doc. 7-3), purportedly stating during the attack that "this comes from Alex Burke . . . [t]his is what you get for fucking with his cases." (Doc. 19 at 4, ¶ 5.)

Morales asserts that, after the purported assault and battery, she filed several grievances against MacKenzie and Newtown seeking redress. (*See* Docs. 7-1–7-8.) Specifically, Morales asserts that on November 9, 2016, she filed "Grievance Form #1, Informal Complaint & Plan for Resolution Form," asking to meet with a police officer to make a statement against MacKenzie and Newton. (Doc. 7-1.) According to Morales, officials at SSCF did not reply to this grievance, and on November 12, 2016, Morales submitted "Grievance Form #2, Offender/Inmate Grievance Submission Form," stating that her first grievance had been received but had not been "signed, dated, and timed" and that she did not receive a timely plan for resolution. (Doc. 7-3.) She also asked again to meet with a police officer to report the alleged assault. (*Id.*) Morales claims that, on December 20, 2016, she filed "Grievance Form #5, Decision Appeal to Corrections Executive," in which she sought appeal of her previous two grievance forms, claiming that the forms had been received but had been not signed, dated, and timed and repeating

5

her request to speak with a police officer. (Doc. 7-5.) Finally, Morales alleges that on January 29, 2017, she appealed her grievances to the DOC Commissioner using "Grievance Form #7, Decision Appeal to Commissioner," stating that she had not received a timely response to any of her previous grievances and asking again to meet with a policy officer. (Doc. 7-7.) Morales did not receive a response to this final appeal and, on July 7, 2017, she instituted the present suit in this case. (Doc. 1.)

Morales has provided the Court with purported copies of the unsigned grievance forms that she submitted. (*See* Docs. 7-1, 7-3.) Newton challenges Morales's assertions, arguing that the DOC has no record that Morales filed the forms. (Doc. 44 at 6; Doc 45 at 4, ¶ 16.) In support of this argument, Newton relies on the affidavit of David Turner, the DOC's Director of Policy Development and Offender Due Process. (Doc. 45-1.) According to Turner, the DOC maintains a database of grievance appeals that are sent to the executive level and those that are sent to the Commissioner. (*Id.* at 2, ¶ 9.) After a search of this database, Turner states that "there are no grievance appeals either to the superintendent or to the Commissioner concerning the matters of which [Morales] complains in this lawsuit," nor are there paper copies of grievance appeals filed by Morales. (*Id.* at 2, ¶ 10.) In addition, Turner asserts that he reviewed the grievance forms submitted by Morales and determined that "none of these forms were received by Department officials" because the forms were not signed by a Department staff person. (*Id.* ¶ 12; *id.* ¶ 13.)

### III. Procedural History

On July 7, 2017, Morales began the present action under 42 U.S.C. § 1983 in this Court. (Doc. 1.) As noted above, because Newton is no longer employed by the DOC, Morales initially encountered difficulties locating and serving Newton. (*See* Docs. 29, 34.) Ultimately, this Court received Newton's executed waiver of service on April 19, 2018. (Doc. 37.)

In her Amended Complaint, Morales contends that, in retaliation for providing legal assistance to fellow inmates, Burke directed Newton and MacKenzie to assault and batter her in violation of the First and Fourteenth Amendment. (Doc. 19 at 3–4, ¶¶ 3–5.) Morales also asserts that this retaliatory assault and battery "discriminat[ed] against her based upon her open self-identification as female, gay, mentally ill, Puerto Rican, and transgender." (*Id*. at 2, ¶ 1; *id*. at 3–4, ¶¶ 2–5.) As noted above, in his Motion for Summary Judgment, Newton argues that Morales failed to exhaust her administrative remedies, as required by the PLRA. (Doc. 44 at 5); *see also* 42 U.S.C. § 1997e.

## Analysis

### I. Summary Judgment Standard

"A party may move for summary judgment in lieu of an answer." *Mckinney v. Prack*, 170 F. Supp. 3d 510, 513–14 (W.D.N.Y. 2016); *see also* Fed. R. Civ. P. 56(b) (providing that a party may file a motion for summary judgment "at any time until 30 days after the close of all discovery"). "The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after

7

discovery has occurred—the moving party must demonstrate that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law." *Mckinney*, 170 F. Supp. 3d at 514; *see also* Fed. R. Civ. P. 56(a). A "genuine [dispute] as to any material fact" exists when factual issues materially affecting the outcome could reasonably be resolved in favor of either party. *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). In other words, "[t]he moving party is entitled to summary judgment where 'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor' on an essential element of a claim on which the plaintiff bears the burden of proof." *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22 (2d Cir. 2012) (quoting *In re Omnicom Grp., Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)).

In conducting this analysis, if there is a genuine dispute regarding the material facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Although the Court accepts as true a nonmoving party's allegations that are supported by admissible evidence, and also gives the nonmoving party the benefit of all reasonable doubts and inferences, a nonmoving party's "mere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). If no genuine issue of material fact exists and the nonmoving party has had an adequate opportunity to address the issues involved by developing facts necessary to oppose summary judgment, summary judgment is proper. Fed. R. Civ. P. 56(e).

## II. Failure to Exhaust

Concluding that the record presents an ambiguous account of Morales's efforts to complete the exhaustion process, Newton's motion for summary judgment should be DENIED.

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[F]ailure to exhaust is an affirmative defense," *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citation omitted); accordingly, "defendants bear the burden of proof[,] and prisoner plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003). To satisfy their initial burden, defendants must establish, through "legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (internal quotation marks and alteration omitted). "If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact." *Id.*; *see also Rossi v. Fishcer*, No. 13-CV-3167 (PKC)(DF), 2015 WL 769551, at *4 (S.D.N.Y. Feb. 24, 2015); *see also* 42 U.S.C. § 1997e(a). With respect to a procedure's availability, "[a] number of federal circuit courts have held that a failure to respond to a grievance within the time limit prescribed by the prison grievance process renders an administrative remedy

9

unavailable for purposes of exhaustion," *Rossi*, 2015 WL 769551, at *4 (citing cases). However, the Second Circuit has not conclusively resolved this issue, only noting that failing to respond to a grievance *may* render an administrative remedy unavailable. *See Hemphill v. New York*, 380 F.3d 680, 686 n.6 (2d Cir. 2004), *abrogated on other grounds by Medina v. Napoli*, 725 F. App'x 51, 53 (2d Cir. 2018). Still, courts in the Second Circuit have generally "agreed with the proposition that administrative remedies may be deemed unavailable when the prison fails to timely respond to a grievance." *Rossi*, 2015 WL 769551, at *5 (citing cases). This conclusion makes sense because a prisoner who "has complied with all of the administrative requirements and made a good-faith effort to exhaust, . . . should not be denied the opportunity to pursue his [or her] grievance in federal court simply because" administrative decision makers have failed to respond to the grievance. *Torres v. Carry*, 672 F. Supp. 2d 338, 345 (S.D.N.Y. 2009)

In this case, viewing the record in the light most favorable to Morales, she has submitted sufficient evidence for a reasonable factfinder to conclude that the DOC grievance procedure was unavailable. *See Hubbs*, 788 F.3d at 59. The grievance forms submitted by Morales demonstrate that she followed the four-tiered process set forth in Directive 320.01: Morales first filed "Grievance Form #1, Informal Complaint & Plan for Resolution Form" (Doc. 7-1), then filed "Grievance Form #2, Offender/Inmate Grievance Submission Form" (Doc. 7-3), and finally appealed her grievance by submitting "Grievance Form #5, Decision Appeal to Corrections Executive" and "Grievance Form #7, Decision Appeal to Commissioner." (Docs. 7-5, 7-7.) At each stage, Morales waited the requisite amount of time under

10

Directive 320.01 before filing the next grievance form. Further, according to Morales, DOC administrators neither responded to these grievances, nor signed, dated, and timed the grievance forms as required by Directive 320.01. (Doc. 49 at 6–7, ¶¶ 7–9.) Indeed, in each successive grievance, Morales asserted in writing that she had not received a timely response to the prior grievance forms. (*See* Docs. 7-3–7.8.) At this stage, this evidence sufficiently demonstrates that a question of fact exists as to Morales's failure to exhaust.

Newton's arguments to the contrary are not persuasive. Newtown correctly states that "where an inmate claims that corrections officials would not process his grievances, it does not excuse the inmate's non-compliance with grievance procedure 'as [the inmate] could have re-filed any grievance or sought to appeal his grievance when he did not receive a favorable response after attempting to file his initial grievance.'" (Doc. 44 at 6–7 (quoting *Mckinney*, 170 F. Supp. 3d at 517).) But Morales's evidence—if credible—reveals that she did not fail to appeal her initial grievance. Instead, after Morales was confronted by the DOC's alleged inaction, she proactively grieved her claim to completion. *Cf. Parker v. McIntyre,* No. 11–CV–865, 2014 WL 5432153, at *3 (W.D.N.Y. Oct. 27, 2014) ("Courts repeatedly have dismissed complaints . . . when an inmate confronted with facility inaction fails to proactively grieve a claim to completion." (alteration in original) (internal quotation marks omitted)); *Torres v. Carry*, 691 F. Supp. 2d 366, 371 (S.D.N.Y. 2009) (concluding that the record demonstrated that plaintiff failed to administratively appeal his grievance). Similarly, Newton's reliance on Turner's affidavit does not warrant summary judgment. Instead, Turner's affidavit simply establishes a

genuine factual dispute regarding whether Morales actually filed a grievance, and if so, whether the DOC responded to the grievance. At this stage of the proceedings, Turner's affidavit is not sufficient for the Court to grant summary judgment because a reasonable factfinder could conclude that a failure by the DOC to respond to Morales's grievance "rendered a nominally available procedure unavailable as a matter of fact." *Hubbs*, 788 F.3d at 59; *see also Evans v. Jonathan*, 253 F. Supp. 2d 505, 509 (W.D.N.Y. 2003) (denying defendants' motion for summary judgment where record contained "an ambiguous account of plaintiff's efforts to complete the exhaustion process"); *Croswell v. McCoy*, No. Civ. 9:01–CV–00547, 2003 WL 962534, *4 (N.D.N.Y. Mar. 11, 2003) (denying summary judgment on issue of exhaustion where the record was unclear regarding the efforts plaintiff took to exhaust his remedies); *Evans v. Nassau Cty.*, 184 F. Supp. 2d 238, 245 (E.D.N.Y. 2002) (question of fact exists regarding plaintiff's attempts to exhaust his administrative remedies).

Based on the foregoing I recommend that Newtown's Motion for Summary Judgment be DENIED.

## III. Motion for Appointment of Counsel

Next, concluding that the relevant factors do not weigh in Morales's favor, Morales's Motion to Appoint Counsel is DENIED. (Doc. 59.)

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Conn. State Trooper Officer # 1283*, 640 F.3d 62, 68 (2d Cir. 2011); *see also United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981). Nevertheless, a party granted *in forma pauperis* status may move the Court for the appointment of an attorney if unable to afford one on his or her own. *See* 28 U.S.C.

§ 1915(e)(1). A court may ask an attorney to represent an indigent litigant under §1915(e)(1), but Congress has not appropriated funds to pay an attorney who accepts such an appointment. *Clarke v. Blais*, 473 F. Supp. 2d 124, 125 (D. Me. 2007). A court is granted "[b]road discretion" in deciding whether to grant a request that an attorney represent a litigant pro bono. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

The Second Circuit has laid out a framework for determining whether counsel should be appointed for *in forma pauperis* litigants in civil cases. *Id.* at 61. First, a court must determine whether the indigent's claim "is likely one of substance." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (citing *Hodge*, 802 F.2d at 61). "[E]ven though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the . . . claim are thin and [the plaintiff's] chances of prevailing are therefore poor." *Id.* (denying request for counsel where petitioner's appeal was not frivolous but nevertheless appeared to have little merit). Once satisfied that a plaintiff's claims are substantive, a court should then consider the following factors:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues[,] and any special reason . . . why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61–62.

In this case, the merits of Morales's claims are thin. As noted above, this Court has already recommended dismissing Morales's claims against Burke for

13

failure to plausibly allege that Morales engaged in constitutionally protected conduct or that Burke unlawfully discriminated against her. (Doc. 47 at 17–23.) Given that Morales's claims against Newton arise from the same operative facts, Morales's chances of prevailing are not high. Furthermore, Morales has the demonstrable ability to present her claims in a cogent and understandable manner. Indeed, throughout these proceedings, Morales's filings have demonstrated why other inmates seek out her assistance for legal proceedings. She is plainly capable of conducting effective legal research and presenting the results of that research in an articulate manner, particularly because her claims are not overly complex. Finally, although a possibility exists that Newton and MacKenzie may need to be cross-examined to establish their roles in the purported assault and battery, it does not appear at this early stage that the case will reach that point. Given that Morales has proven that she can investigate the crucial facts of the case and cogently present those facts despite being incarcerated, assigned counsel is not necessary.

## **Conclusion**

For the foregoing reasons, I recommend that the Court DENY Netwon's Motion for Summary Judgment. (Doc. 44.) Morales's Motion for Appointment of Counsel is DENIED. (Doc. 59.)

Dated at Burlington, in the District of Vermont, this 22nd day of January 2019.

/s/ John M. Conroy<br>
John M. Conroy<br>
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).