UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Serendipity Morales,

      Plaintiff,

           v.

Barry Joseph Mackenzie and
Chad Newton,

      Defendants.

Civil Action No. 5:17–cv–124-gwc-kjd

### REPORT AND RECOMMENDATION ON
### PLAINTIFF'S EXHAUSTION OF ADMINISTRATIVE REMEDIES
(Docs. 157, 158, 159)

Plaintiff Serendipity Morales, a prisoner proceeding *pro se*, brings this action under

42 U.S.C. § 1983 against two former correctional officers at Southern State Correctional Facility

(SSCF), Barry Joseph Mackenzie and Chad Newton.[1]  Plaintiff alleges that, while in the custody

of the Vermont Department of Corrections (DOC), she provided legal assistance to five inmates

with pending criminal charges.  According to Plaintiff, in retaliation for that assistance,

Defendants assaulted her and discriminated against her based on her identification as "female,

gay, mentally ill, Puerto Rican, and transgender."  (Doc. 19 at 2, ¶ 1.)  Plaintiff seeks

compensatory and punitive damages totaling over 14 million dollars (*id.* at 1, ¶¶ 4–5), and "all

other relief in the interest of justice" (*id.* at 2, ¶ 6).

---

[1] Plaintiff initially named Deputy State's Attorney Alexander Burke as a defendant in this action.  (Doc. 19.)  In May 2019, the parties stipulated to the dismissal of Mr. Burke from the case without prejudice.  (*See* Doc. 83.)

This Report and Recommendation addresses Plaintiff's exhaustion of administrative remedies under the Prison Litigation Reform Act (PLRA). The undersigned has reviewed the parties' legal memoranda on the issue, conducted an evidentiary hearing, and considered the parties' post-hearing memoranda. For the reasons discussed below, I recommend that the Court find Plaintiff has not exhausted available administrative remedies and therefore this action should be dismissed with prejudice because the time to exhaust has expired. I further recommend that the Court deny Plaintiff's Petition for Declaratory and Extraordinary Relief (Doc. 157), Motion Challenging the Constitutionality of the PLRA's Exhaustion Requirement (Doc. 158), and Motion Requesting Additional Discovery and to Postpone Ruling on the Issue of Exhaustion. (Doc. 159.)

## Background Facts and Procedure

The following facts are taken primarily from Plaintiff's Amended Complaint (Doc. 19) and the parties' briefs and accompanying exhibits related to the evidentiary hearing on exhaustion (Docs. 137, 137-1–137-7, 138, 146, 153, 155-1–155-7, 156). As Plaintiff is proceeding *pro* se, the Court construes Plaintiff's submissions liberally, interpreting them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

## I.      Relevant Facts

Plaintiff, an inmate in the custody of the DOC, "open[ly] self-identifi[es] as female, gay, mentally ill, Puerto Rican, and transgender." (Doc. 19 at 2, ¶ 1.) Although Plaintiff has neither formal legal training nor a license to practice law, she has assisted fellow prisoners with their legal proceedings. (*Id.*) Relevant to this lawsuit, from approximately December 2015 to January 2016, Plaintiff assisted five *pro se* prisoners with drafting and filing papers and otherwise litigating pretrial proceedings in prosecutions brought by Bennington County Deputy State's

Attorney Alexander Burke.[2]  (*Id.*)  Plaintiff was incarcerated at Marble Valley Regional

Correctional Facility (MVRCF) at the time she was providing legal assistance to inmates.  (*Id.*)

In January 2016, Plaintiff was transferred from MVRCF to SSCF, the facility where

Defendants Mackenzie and Newton were employed as correctional officers.  (*Id.* at 3, ¶ 3.)

Plaintiff alleges that on November 8, 2016, Mackenzie and Newton entered Plaintiff's jail cell

and "physically battered" her "with a plethora of forceful blows from their elbows, feet, fists,

hands, and knees," stating: "'[T]his comes from Alex Burke.  This is what you get for fucking

with his cases.'"  (*Id.* at 4, ¶ 5.)  Plaintiff contends that she exhausted administrative remedies

related to this assault by filing "grievance forms for each step of the grievance process

established in the DOC's Directive #320.01."  (Doc. 156 at 2 (referring to Exhibits 2 through 5 to

Defendants' Hearing Memorandum and Post-Hearing Memorandum, docketed as Docs. 137-3–

137-6 and Docs. 155-3–155-6)[3]; *see* Doc. 19 at 5, ¶ 7 (citing Docs. 7, 7-1–7-8).)

## II.    Plaintiff's Complaint, Motion for Summary Judgment, and Discovery

Plaintiff filed her Complaint in this case in July 2017.  (Doc. 4; *see* Docs. 7, 7-1–7-8.)

She filed the Amended Complaint in January 2018.  (Doc. 19.)  In June 2018, Defendant Newton

moved for summary judgment, arguing that the case should be dismissed because Plaintiff had

not exhausted administrative remedies as required by the PLRA.  (Doc. 44.)  Newton specifically

---

[2] Because of the legal assistance Plaintiff provided to these *pro se* prisoners, Burke filed an information with the Vermont Supreme Court in 2016 charging Plaintiff with six counts of unauthorized practice of law in violation of 4 V.S.A. § 901 and Administrative Order No. 41, § 2.  (*Id.* at 3–4, ¶ 4.)  *See In re Morales*, 2016 VT 85, ¶¶ 1–2, 151 A.3d 333, 334 (2016).  The Court conducted a probable cause review and concluded in August 2016 that Plaintiff's legal assistance to fellow prisoners did not violate the law.  *Id.* at ¶ 26, 151 A.3d at 341.  Recognizing the longstanding tradition of "jailhouse lawyering," the Court explained that the legal advice and drafting assistance Plaintiff provided to fellow prisoners "d[id] not amount to the unauthorized practice of law."  *Id.*

[3] This Report and Recommendation cites Defendants' Exhibits 2 through 5—the grievance forms that Plaintiff claims to have submitted in an effort to grieve Defendants' alleged battery of her—by their CMECF document numbers, Docs. 137-3 through 137-6.  Defendants attached to their June 17, 2022 Hearing Memorandum these Exhibits, the DOC's relevant grievance policy (Ex. 1, Doc. 137-2), and Plaintiff's prison mail log during the relevant period (Ex. 6, Doc. 137-7).  Defendants filed the same Exhibits with their Post-Hearing Memorandum.  (Doc. 155-3–155-6.)

claimed that Plaintiff failed to submit the required grievance forms to DOC officials and that the DOC Commissioner never received the required grievance appeal forms. (*Id.* at 6.) Plaintiff opposed Newton's Motion for Summary Judgment, asserting that she had in fact exhausted available administrative remedies because she had filed the required forms and received no response. (*See* Doc. 49 at 2, 6–8.) Newton replied that, to the extent a disputed issue of fact precluded summary judgment, an evidentiary hearing should be held "on the limited issue of Plaintiff's exhaustion of her administrative remedies." (Doc. 52 at 7; *see id.* at 8 ("If this Motion is denied, Defendant Newton respectfully requests an evidentiary hearing.").)

In January 2019, Magistrate Judge John Conroy issued a Report and Recommendation recommending denial of the Motion for Summary Judgment because material questions of fact remained as to Plaintiff's efforts to exhaust her administrative remedies. (Doc. 68 at 2.) Judge Conroy noted that "Morales's evidence—if credible—reveals that she did not fail to appeal her initial grievance." (*Id.* at 11.) In July 2019, Chief Judge Crawford agreed that material questions of fact remained on the issue of exhaustion, and appointed counsel for Plaintiff. (Doc. 87.)

In June 2019, the parties entered into a Stipulated Discovery Schedule/Order, which limited discovery to "Plaintiff's efforts to exhaust administrative remedies related to her alleged assault [that occurred] on or about November 8, 2016." (Doc. 86 at 1, ¶ 1.) In October 2019, the scheduling order was amended "to extend the deadline to join parties and amend pleadings from October 31, 2019 to December 20, 2019." (Doc. 95 at 1.) On March 6, 2020, the Court entered a Second Amended Stipulated Discovery Schedule/Order extending the discovery period until May 13, 2020 (Doc. 108); *see also* Doc. 105 (motion seeking "additional time to facilitate the transition to *pro se* representation, complete discovery, and prepare for an evidentiary hearing on the issue of administrative exhaustion." (Doc. 105 at 1; *see* Doc. 108 at 2, ¶¶ 9, 11, 12.) On

March 10, 2020, the Court permitted Plaintiff's counsel to withdraw from the case. (Doc. 110 (text order).) Pursuant to the discovery orders, the parties exchanged written discovery, and two depositions (including Plaintiff's) were taken. (*See* Doc. 114 at 2.)

In January 2021, Plaintiff filed a "Request for Enlargement of Time," asking the Court to extend the discovery and motions due dates and the date for an evidentiary hearing. (Doc. 112.) Defendants opposed the request. (Doc. 114.) Judge Conroy denied the Motion, finding that Plaintiff had not met the good cause standard under Rule 16(b)(4) to reopen discovery or the exceptional circumstances standard under Local Rule 26(a)(7) for requests made after the discovery deadline has expired. (Doc. 118 at 9.)

## III.    Pre-Evidentiary Hearing Meetings and Filings

On June 3, 2022, the parties appeared before the Court for a status conference via Zoom to discuss the procedural requirements of the evidentiary hearing scheduled for June 27, 2022. (ECF No. 133.) Plaintiff presented as unwell, however, and left the hearing before discussion of any substantive issues. The videoconference was rescheduled for June 7, 2022. Plaintiff appeared and advised that she was feeling better, but stated that prison authorities had placed her on "suicide watch." (ECF No. 135.) Plaintiff informed the Court and defense counsel that her father, Ivan Morales, would testify at the evidentiary hearing in support of her claims. Defendants advised that they would present two witnesses: David Turner, the DOC grievance coordinator, and Bruce Nappi, the correctional officer to whom Plaintiff claimed she had given the relevant grievance forms. Plaintiff requested that defense counsel provide to her, in advance of the evidentiary hearing: (a) Turner's affidavit, (b) the transcript of Nappi's deposition, and (c) copies of the relevant grievances (Grievance Form #s 1, 2, 5, and 7). Defense counsel agreed to provide those documents to Plaintiff.

The Court also requested that the parties file memoranda prior to the evidentiary hearing detailing the evidentiary showing each party expected to make. (Docs. 137, 138). Defendants intended to demonstrate that Plaintiff failed to exhaust her administrative remedies because: (a) Plaintiff's grievance forms for the initial two stages of the grievance process are missing required correctional officer signatures, indicating Plaintiff did not give them to a correctional officer; and (b) Plaintiff's mail log does not show that Plaintiff mailed the required grievance appeal forms from the facility where she was incarcerated during the relevant period, and the DOC's grievance database contains no record of the DOC's Central Office receiving Plaintiff's grievance appeal forms around that period. (Doc. 137.) Defendants also objected to Ivan Morales testifying as a witness at the hearing for several reasons, including that Ivan Morales "lack[ed] personal knowledge relevant to Plaintiff's exhaustion of her administrative remedies." (*Id.* at 3.) Plaintiff filed a pre-hearing memorandum in which she maintained her right to have Ivan Morales testify at the hearing (*see* Doc. 138 at 4), but she made no substantive arguments to support the claim that she exhausted available administrative remedies.

## IV.    Evidentiary Hearing

The Court conducted the evidentiary hearing via Zoom on July 5, 2022. (ECF No. 139; *see* Doc. 142 (Transcript of Evidentiary Hearing on Exhaustion).) Defense witnesses Bruce Nappi and David Turner were sworn under oath and examined by defense counsel and Plaintiff. (*See* Doc. 140 (Exhibit and Witness List).) The Court received in evidence five defense exhibits consisting of DOC Offender Grievance System Directive # 320.01 (Directive 320.01) and the four grievance forms relevant to Plaintiff's claim. (*Id.*) Correctional Officer (CO) Bruce Nappi testified that, despite Plaintiff's representation that she submitted Grievance Form #s 1 and 2 (Exs. 2 and 3, Docs. 137-3 and 137-4) to him, he had no recollection of receiving those forms. He further testified that, had he received the forms—especially given the gravity of the

6

grievance, i.e., assault of a prisoner by correctional officers—he would have signed and dated them, and immediately reported them to facility management. CO Nappi also testified that, as a shift supervisor, if an inmate told him that a grievance form had not been signed by a prison employee, he would provide the inmate with another grievance form to complete to ensure that the proper grievance procedures would be followed. (*See* Doc. 142 at 14–18.)

DOC Grievance Coordinator David Turner testified generally about the required procedures regarding inmate grievances, as provided in Directive 320.01 (Ex. 1, Doc. 137-2). He then discussed the specific grievance forms at issue in this case, credibly testifying that the fact that Plaintiff's Grievance Form #s 1 and 2 (Exs. 2 and 3, Docs. 137-3 and 137-4) were not signed by a correctional staff person indicates that those forms were never given to a correctional staff person to resolve. He further stated that Grievance Form #s 5 and 7 (Exs. 4 and 5, Docs. 137-5 and 137-6), which are the required grievance appeal forms inmates must use to appeal the handling of Grievance Form #s 1 and 2, were also not properly submitted. Turner testified that these forms would be submitted to DOC's Central Office, where an administrator would log them into the electronic Offender Management System (OMS) under the offender's name. After checking that database, however, Turner found no entry indicating grievance appeal forms were mailed to Central Office. In fact, he found no evidence related to Plaintiff's grievance whatsoever; nothing had been filed, scanned in, or signed off on. Turner also testified that he checked Plaintiff's mail log, and it showed that Plaintiff had not mailed anything to Central Office during the relevant period. For these reasons, Turner testified that he found no evidence that Plaintiff filed any of the required grievance forms either with staff at Plaintiff's prison facility or in DOC's Central Office. (*See* Doc. 142 at 39–54.)

Plaintiff asked Turner what he would do if he learned that an inmate's grievance form was not signed. Turner testified that "[t]here shouldn't be a reason why it's not signed" (*id.* at

56:6), and further stated that if that did happen, the grievance would be rejected and returned to the inmate to re-file (*id.* at 56:24–57:5).

In response to the testimony and evidence submitted by Defendants, Plaintiff testified that she gave Grievance Form #1 to CO Nappi, who in turn stated that it was "above him" and that he would have to "go higher up the chain of command." (*Id.* at 69:2–3.) Plaintiff stated that she received no response to the grievance within about the next 48 to 72 hours, and consequently she spoke with Nappi again, stating that she "was submitting [Grievance Form #] 2." (*Id.* at 69:7.) A few days later, Plaintiff was apparently transferred to a different correctional facility, which she stated was the location from which she mailed Grievance Form #s 5 and 7. Plaintiff testified that, after receiving no response to those grievance forms, she asked her caseworker about the status of her grievance and otherwise "tried to deal with" the situation for five months before filing this litigation. (*Id.* at 69:20–21.) Plaintiff explained that she "know[s] for a fact" that she "attempted to resolve th[e] [grievances] with Bruce Nappi at the 1 and 2 level" and that she "mailed out" Form #s 5 and 7. (*Id.* at 70:13–15.) Plaintiff stated that she could not find a remedy for what happens when a DOC staff member fails or refuses to sign an inmate's grievance. Finally, Plaintiff testified that the lack of documentation regarding her grievance forms in the OMS proves nothing other than a pattern of "terrible record-keeping." (*Id.* at 71:14.) Plaintiff further testified that there are "six other mailings" that were not logged during the relevant period. (*Id.* at 71:15, 17.)

Ivan Morales did not appear at the evidentiary hearing. The Court granted Plaintiff two weeks to "obtain and produce to [defense] counsel . . . any relevant documentation that would be testified to by [Ivan Morales] pertaining to the issue of exhaustion." (ECF No. 139.) On August 19, 2022, however, Plaintiff advised the Court that she "no longer intend[ed] to use documentary evidence in . . . Ivan Morales['s] possession, or [Ivan] Morales['s] testimony." (Doc. 145 at 2.)

V.    **Post-Hearing Memoranda**

Defendants filed a Post-Hearing Memorandum on October 12, 2022.  (Doc. 153.)
Defendants argue that, although Plaintiff produced grievance forms for each step of the
grievance process outlined in Directive 320.01, the evidence nevertheless demonstrates that she
failed to properly exhaust her claim.  First, Grievance Form #s 1 and 2 do not include the
required signatures that would establish their delivery to a correctional officer.  Second, there is
no record that Grievance Form #s 5 and 7 were mailed to or received by Central Office.
Regarding Grievance Form #s 1 and 2, CO Nappi testified that he did not recall receiving them,
and that if he had received them, he would have a recollection of such a serious grievance.
Defendants contend the evidence demonstrates that the DOC's grievance procedure was
available to Plaintiff during the relevant period, but she failed to properly exhaust her
administrative remedies.

Plaintiff filed a Post-Hearing Memorandum on November 2, 2022.  (Doc. 156.)  Plaintiff
asserts that she presented the relevant grievance forms to the Court and testified that she gave
them to CO Nappi, who "took them without signing them."  (*Id.* at 2.)  She further asserts that
she "submitted" Grievance Form #s 5 and 7, thereby exhausting her administrative remedies.
Alternatively, but without providing any supporting factual information, Plaintiff claims that she
was "thwarted from using the grievance process through prison officials' machinations,
misrepresentations, or intimidation."  (*Id.*)  In addition, Plaintiff argues that the DOC grievance
procedure "does not provide any guidance as to when a DOC staff [member] refuses to sign a
prisoner's Grievance Form #1 or . . . #2" (*id.* at 7), or "when a DOC staff [member] alleges to
not have received a prisoner's . . . Grievance Form #5 or . . . #7 mailed by [the] prisoner" (*id.* at
8).  According to Plaintiff, "Nappi's refusal to sign Plaintiff's . . . Grievance Form #1 and . . . #2,
combined with the DOC's and/or the United States Postal Service's . . . loss or mishandling of

Plaintiff's Grievance Form #5 and . . . #7 made the grievance procedure unavailable to Plaintiff."
(*Id.*)  Other than these assertions, Plaintiff does not offer any facts or evidence to support these
claims.[4]

## Analysis

### I.     Applicable Law

The PLRA requires prisoners to exhaust available administrative remedies before filing a
federal lawsuit relating to prison conditions.  *See* 42 U.S.C. § 1997e(a) ("No action shall be
brought with respect to prison conditions under section 1983 of this title, or any other Federal
law, by a prisoner confined in any jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted.").  The exhaustion requirement "applies
to all inmate suits about prison life, whether they involve general circumstances or particular
episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*,
534 U.S. 516, 532 (2002).  Prisoners are not entitled to a jury trial on factual issues related to
administrative exhaustion under the PLRA.  *Messa v. Goord*, 652 F.3d 305, 310 (2d Cir. 2011).
PLRA exhaustion is a "matter of judicial administration," requiring the court, not a jury, to
determine factual disputes concerning an inmate's alleged failure to exhaust.  *Id.* at 308; *see id.*
at 309 ("Matters of judicial administration often require district judges to decide factual disputes
that are not bound up with the merits of the underlying dispute."); *McLean v. LaClair*, 9:19-CV-
1227 (LEK/ATB), 2021 WL 671650, at *9 (N.D.N.Y. Feb. 22, 2021) ("In order to determine
whether [p]laintiff properly exhausted administrative remedies, the [c]ourt must hold a hearing,

---

[4]     On December 27, 2022, Plaintiff requested leave to conduct additional discovery due to "shortcomings in
the current [Vermont Department of Corrections] grievance process."  (Doc. 159 at 2.)  As discussed in Part V
below, it is recommended that the Court deny this request.

at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present.").

Failure to exhaust administrative remedies is an affirmative defense. Therefore, the defendant bears the initial burden of establishing that the plaintiff failed to satisfy the PLRA's exhaustion requirement. *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015); *Nelson v. Plumley*, No. 9:12–CV–422, 2015 WL 4326762, at *7 (N.D.N.Y. July 14, 2015) ("As an affirmative defense . . . , the party asserting failure to exhaust administrative remedies typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence." (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007))). The defendant meets this burden by "pointing to legally sufficient source[s] such as statutes, regulations, or grievance procedures" to demonstrate that a grievance process existed and applied to the underlying dispute, and that nevertheless the plaintiff failed to follow those procedures. *Hubbs*, 788 F.3d at 59 (alteration in original) (internal quotation marks omitted). Once the defendant has met this initial burden, the plaintiff must demonstrate that "other factors—for example, threats from correction[al] officers—rendered a nominally available procedure unavailable as a matter of fact." *Id.*; *see White v. Velie*, 709 F. App'x 35, 38 (2d Cir. 2017) (summary order); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 126 n.6 (2d Cir. 2016); *Woodward v. Lytle*, Civil Action No. 9:16-CV-1174 (NAM/DEP), 2019 WL 2527342, at *4 (N.D.N.Y. May 24, 2019) ("[A]lthough the burden of proof on this affirmative defense remains with the defendant at all times, a plaintiff can be required to produce evidence in order to defeat it."), *report and recommendation adopted*, 2019 WL 2524756 (June 19, 2019).

In order to properly exhaust, prisoners must comply with all procedural rules of the agency's grievance process prior to commencing an action in federal court. *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). "Proper exhaustion demands compliance with an agency's deadlines

and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* Proper exhaustion: (a) requires "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)," and (b) "demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90 (internal quotation marks omitted). The Supreme Court has explained that "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance," and "[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id.* at 95.

An inmate's failure to exhaust administrative remedies is excusable only if the remedies are "unavailable." *Ross v. Blake*, 578 U.S. 632, 642 (2016). In other words, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.*[5]; *see Rucker v. Giffen*, 997 F.3d 88, 92 (2d Cir. 2021) ("[P]risoners are exempt from the exhaustion requirement only when the grievance procedures are not capable of use to obtain some relief for the action complained of such that the administrative remedies are unavailable." (internal quotation marks omitted)). *Ross* identified three examples of "unavailable" administrative procedures (i.e., "three

---

[5] As the Second Circuit recently observed, "*Ross* overturned Second and Fourth Circuit case law that had adopted a 'special circumstances' exception to the PLRA's exhaustion requirement, 'permitting some prisoners to pursue litigation even when they ha[d] failed to exhaust available administrative remedies.'" *Romano v. Ulrich*, 49 F.4th 148, 153 (2d Cir. 2022) (alteration in original) (quoting *Ross*, 578 U.S. at 635). The Supreme Court "reject[ed] that freewheeling approach to exhaustion as inconsistent with the PLRA," explaining that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." *Ross*, 578 U.S. at 635, 648. The Court "underscore[d]" the PLRA's "built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 635–36. As the Second Circuit explained the change in the law, "*Ross* largely supplants our . . . inquiry [under *Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004)] by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016); *see also id.* ("[T]o the extent that our special circumstances exception established in *Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir.2004), and *Hemphill*, 380 F.3d at 689–91, permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.").

kinds of circumstances in which an administrative remedy, although officially on the books, is

not capable of use to obtain relief"): (1) those that, despite what regulations or guidance

materials may promise, "operate[] as a simple dead end[,] with officers unable or consistently

unwilling to provide any relief to aggrieved inmates"; (2) those that are "so opaque that [they]

become[], practically speaking, incapable of use[, i.e.], some mechanism exists to provide relief,

but no ordinary prisoner can discern or navigate it"; and (3) those where "prison administrators

thwart inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44 (citing *Woodford*, 548 U.S. at

102; *Booth v. Churner*, 532 U.S. 731, 736, 738 (2001)); *see Saeli v. Chautauqua Cnty., N.Y.*,

36 F.4th 445, 453 (2d Cir. 2022) ("Even where . . . a [grievance] process theoretically exists and

applies, . . . the Supreme Court has recognized three situations in which an administrative

remedy is *de facto* unavailable and, thus, exhaustion is not required . . . .").

## II.     DOC's Exhaustion Procedures

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper

exhaustion." *Jones*, 549 U.S. at 218. Directive 320.01 governs the DOC offender grievance

system and was the grievance policy in effect at the time of the events at issue in this case. (*See*

Ex. 1, Doc. 137-2, DOC Offender Grievance System for Fields and Facilities, Directive #

320.01.) This Directive sets forth a four-tiered process beginning with an inmate submitting

"Grievance Form #1," titled "Informal Complaint & Plan for Resolution Form." (*Id.* at 2, 7; *see*

Directive 320.01(7)(a)(i).) If a plan to resolve this informal complaint is not agreed upon within

48 hours, the inmate may then proceed to the formal grievance process. (*See id.* at 8; Directive

320.01(7)(a)(vi).) The first step of the formal grievance process is filing "Grievance Form #2,"

titled "Offender/Inmate Grievance Submission Form." (*Id.* at 2, 11; *see* Directive

320.01(10)(a)(vi).) DOC facility staff and supervisors must then investigate and provide the

inmate with a resolution within 20 business days.  (*See id.* at 11, 12; Directive 320.01(10)(a)(ii),

(xii).)  If the inmate is unsatisfied with the DOC's resolution, she may then appeal that decision

using "Grievance Form #5," titled "Decision Appeal to Corrections Executive."  (*Id.* at 2, 15; *see*

Directive 320.01(15)(a)(i).)  If the inmate remains unsatisfied, she may seek relief from the DOC

Commissioner through "Grievance Form #7," titled "Decision Appeal to Commissioner."  (*Id.* at

2, 15; *see* Directive 320.01(15)(b)(i).)  Upon return of the Commissioner's decision, the

disposition of the grievance "is considered final in regard to [an] administrative remedy," and no

further administrative action is required.  (*Id.* at 16; Directive 320.01(15)(b)(iii).)

## III.  Findings of Fact and Conclusions of Law

After holding an evidentiary hearing on the issue of exhaustion and considering the

evidence and argument of the parties, I find that Defendants have met their burden of

demonstrating that a grievance process existed and applied to the underlying dispute, and that

Plaintiff did not properly exhaust that process.  Moreover, I find that Plaintiff has not presented

credible evidence demonstrating that the grievance process was unavailable to her.  As discussed

above, Directive 320.01 was in effect at the time of the alleged assault that gave rise to Plaintiff's

grievance and this litigation.  Defendants presented the testimony of DOC Grievance

Coordinator Turner regarding the requirements of the grievance process under Directive 320.01.

According to Turner, regardless of the substance of the grievance, when a DOC staff member

receives a grievance form, the staff member signs the form and notes the date and time of

signature on the designated line.  (Doc. 142 at 40:24–41:1 ("When you receive these [forms] as a

correctional officer, you sign them, date them, and time them.  That is the policy.").)  CO Nappi

similarly testified that, according to the grievance process, if he received a grievance form from

an inmate, he would read it and then sign and date it.  Turner credibly testified that if there is no

staff member signature on the designated line—as with Grievance Form #s 1 and 2 in this case

(*see* Exs. 2 and 3, Docs. 137-3 at 2 and 137-4 at 2)—that would mean the form was not given to a staff member.  Turner concluded: "[I]t does not appear that [Grievance Form #s 1 and 2] were ever handed to a staff person to be resolved . . . ."  (Doc. 142 at 44:1–2.)

Nevertheless, Plaintiff testified that she handed Grievance Form #1 to CO Nappi, and that Nappi stated the issue in the grievance was "above him" and "he'd have to go higher up the chain of command."  (*Id.* at 69:2–3.)  Plaintiff further testified that approximately two-to-three days later, she spoke with Nappi again, expressing concern that she had not received a reply to her initial grievance and stating that she was submitting Grievance Form #2.  For his part, CO Nappi credibly testified that he does not recall receiving either of Plaintiff's initial grievance forms, and that had he received the forms, he would have signed and dated them, and immediately reported the alleged incident to facility management, especially given the serious nature of the allegations.  (*Id.* at 14:20–24, 16:25–17:5.)  This is consistent with Turner's testimony regarding the requirements of Directive 320.01, i.e., that staff members are required to sign and date grievance forms upon receipt.

The only evidence that a DOC staff member received Plaintiff's Grievance Form #s 1 or 2 is Plaintiff's own testimony that she handed Grievance Form #1 to CO Nappi.  With respect to Grievance Form #2, even Plaintiff did not testify that she handed or otherwise provided the form to CO Nappi (or any other DOC staff member).  (*See id.* at 69:7 (Plaintiff testifying only that she told Nappi she "was submitting" Grievance Form # 2).)  The forms themselves—unsigned and undated—are insufficient to demonstrate that Plaintiff submitted them in the manner and within the time required by Directive 320.01.  *See Saeli*, 36 F.4th at 454 ("The informal grievance form standing alone cannot establish a genuine dispute of material fact as to whether [plaintiff] submitted that form at all, much less in time to file a formal grievance," particularly where "the form bears no markings indicating that it was ever received by a [j]ail officer, much less received

15

by any specific date."); *Whittington v. Ponte*, No. 16-cv-1152 (AJN), 2020 WL 2750372, at *7 (S.D.N.Y. May 27, 2020) (rejecting inmate's exhaustion argument where inmate's "self-styled grievances omit[ted] a host of required information and deviate[d] from the [DOC's] template for grievances"); *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) (holding there was "no evidence whatsoever" that grievances were filed, given that "the signature of a grievance officer [wa]s not on any of the forms" and there was "no indication in the record that the grievance officer received any of the forms"), *aff'd*, 178 F. App'x 39 (2d Cir. 2006). Further, Plaintiff has offered no evidence that Nappi or any other DOC staff member refused to sign either Grievance Form #s 1 or 2. For example, Plaintiff did not testify that Nappi returned either form to Plaintiff after Plaintiff handed it to him, or that Nappi rejected either form when Plaintiff attempted to hand it to him.

With respect to Grievance Form #s 5 and 7, the grievance appeal forms, Turner testified that when these forms are received in DOC's Central Office, they are logged by an administrative staff person and assigned for investigation according to the issue raised. (Doc. 142 at 46:11–14.) Turner explained that each grievance appeal is recorded in the OMS under the offender's name, date-stamped, and scanned. (*Id.* at 46:22–47:4.) Although Plaintiff testified that she mailed Grievance Form #s 5 and 7 to Central Office as required, Turner credibly testified that he could not find any record of them in the OMS. Moreover, Turner stated that the DOC's log of Plaintiff's outgoing mail does not show that Plaintiff sent anything to the DOC's Central Office during the relevant period (*id.* at 52:2–53:2), and the log itself demonstrates that fact (*see* Doc. 137-7 at 2–4). In response to this evidence, Plaintiff testified that although she "can't speak for" "[w]hatever happened to that log or to those mailings" (Doc. 142 at 70:15–16), the absence of any record of her grievance in the OMR demonstrates a "pattern" of "terrible record-keeping" (*id.* at 71:14). Plaintiff further testified that there are "six other mailings" that

were not logged during the relevant period.  (*Id.* at 71:15, 17.)  Plaintiff produced no evidence of

those mailings, however, and no evidence to support the claim of "terrible record-keeping."

　　　　Having observed their demeanor and considered their testimony in relation to the

evidence in the record, I find credible the testimony of Grievance Coordinator Turner and CO

Nappi.  Plaintiff presented no reliable evidence refuting Nappi's or Turner's testimony or

generally impugning the credibility of either witness.  At this late stage in the case, it is not

enough for Plaintiff to claim—with no reliable supporting evidence, and in the face of credible

contradictory evidence—that DOC staff members (a) refused to sign, date, and file both of

Plaintiff's initial two grievance forms, and (b) lost or failed to record both of Plaintiff's

grievance appeal forms.[6]  *See, e.g.*, *Blake v. Porlier*, No. 9:18-CV-1008 (DNH/CFH), 2019 WL

7484052, at *5 (N.D.N.Y. Oct. 4, 2019) ("Courts within the Second Circuit have continuously

held that mere contentions or speculation of grievances being misplaced by officers do not create

a genuine issue of material fact when there is no evidence to support the allegations." (internal

quotation marks omitted) (citing cases)), *report and recommendation adopted*, 2020 WL 58613

(Jan. 6, 2020); *Engles v. Jones*, No. 6:13-CV-6461 EAW, 2018 WL 6832085, at *10 (W.D.N.Y.

Dec. 28, 2018) (holding plaintiff failed to exhaust where defendants "demonstrated through

admissible evidence that there [wa]s no record of [p]laintiff having grieved his . . . claim");

*Khudan v. Lee*, No. 12-cv-8147 (RJS), 2016 WL 4735364, at *6 (S.D.N.Y. Sept. 8, 2016)

("Plaintiff's accusations [of mail tampering], which stand alone and are unsupported, are

insufficient to withstand summary judgment." (internal quotation marks omitted)); *Anderson v.

Spizziota*, No. 11-5663 (SJF) (SIL), 2016 WL 11480707, at *17 (E.D.N.Y. Feb. 12, 2016)

---

[6]  Plaintiff questioned CO Nappi at the evidentiary hearing, but she did not ask him whether he allegedly "refused" to sign the grievance forms.  Nor did she ask why he allegedly refused to sign the forms.  Plaintiff also did not attempt to discover, or present evidence to demonstrate, that there were record-keeping or organizational deficiencies at the DOC during the relevant period.

("Where a plaintiff provides no evidence that a grievance was actually filed while defendant supplies evidence of searches of files and databases that failed to turn up that grievance, plaintiff's allegations are insufficient to satisfy the exhaustion requirement."), *report and recommendation adopted sub nom. Anderson v. Sposato*, 2016 WL 1275044 (Mar. 31, 2016); *Litchmore v. Williams*, No. 11 Civ. 7546(DAB)(JCF), 2013 WL 3975956, at *6 (S.D.N.Y. Aug. 5, 2013) (summary judgment granted where there was "no evidence" that "plaintiff's appeal was actually mailed, intercepted, or ignored," "no evidence of any particular officer's misconduct," "no record of any appeal filed," and "no record of [the prison's] receiving any appeal from [plaintiff]"); *Rosado v. Fessetto*, No. 9:09–CV–67 (DNH/ATB), 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) ("Courts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement."), *report and recommendation adopted*, 2010 WL 3809991 (Sept. 21, 2010).

Plaintiff appears to argue that the Court should find that the administrative grievance process was functionally "unavailable" to her.  (*See* Doc. 156 at 7–8); *see Ross*, 578 U.S. at 643 (noting an example of "unavailable" administrative procedure where the grievance procedures "operate[] as a simple dead end[,] with officers unable or consistently unwilling to provide any relief to aggrieved inmates").  The Court finds no evidence in the record to support this claim. Although Plaintiff states in her Post-Hearing Memorandum that Nappi "refus[ed]" to sign Grievance Form #s 1 and 2 (Doc. 156 at 8), and that the DOC "and/or" the United States Postal Service "los[t] or mishandle[ed]" Grievance Form #s 5 and 7, mere argument in a legal memorandum is not sufficient to contradict the evidence of non-exhaustion (*id.*).  *See, e.g.*, *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . ." (alteration and omission in original) (internal quotation marks omitted)); *Tompkins v. City of*

*New York*, 50 F. Supp. 3d 426, 438 (S.D.N.Y. 2014) ("[L]egal memoranda . . . are not evidence and cannot create issues of fact capable of defeating otherwise valid motion[s] for summary judgment." (omission and second alteration in original) (internal quotation marks omitted)); *de Herbstein v. Dabbah Sec. Corp.*, 169 F.R.D. 36, 40–41 (S.D.N.Y. 1996) ("[A]llegations contained in a memorandum of law . . . [are] not the type of competent evidence . . . to oppose a motion for summary judgment and to demonstrate that a material issue of fact exists in the action.").

    Further, Plaintiff did not testify to these particular facts at the evidentiary hearing.  She merely testified, without any supporting evidence, that she handed Grievance Form #1 to Nappi; that she told Nappi she "was submitting a [Grievance Form #]2" (Doc. 142 at 69:7); that the OMR demonstrates a pattern of "terrible record-keeping" (*id.* at 71:14); and that six mailings were not logged during the relevant period (*id.* at 71:15–18).  Nappi and Turner, on the other hand, credibly testified that a correctional officer (and Nappi in particular) was required to sign and file a grievance form whenever received from an inmate, regardless the subject matter, and that there would be a record of Plaintiff's grievance had she filed it.  *See Grafton v. Hesse*, 783 F. App'x 29, 31 (2d Cir. 2019) (finding inmate failure to exhaust, and explaining that the court "cannot say that [plaintiff] plausibly pleaded that staff members were consistently unwilling to provide [plaintiff] with relief"); *McLean v. Harris,* No. 9:19-CV-1227 (BKS/ATB), 2022 WL 1129811, at *10 (N.D.N.Y. Feb. 9, 2022) (finding inmate failure to exhaust where "testimony of the defense witnesses credibly established that the [applicable] grievance process . . . was sufficiently reliable that all three submissions plaintiff purportedly made to the [inmate grievance program during the relevant period] would not have been lost or diverted"); *Davis v. Grant*, No. 15-CV-5359 (KMK), 2019 WL 498277, at *9 (S.D.N.Y. Feb. 8, 2019) ("Plaintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is

insufficient to establish a genuine issue of material fact." (internal quotation marks omitted));

*Woodward*, 2019 WL 2527342, at *5–8 (finding inmate failure to exhaust where: (a) correctional

officers credibly testified that if an inmate asked for a grievance form, they would either give the

form to the inmate or tell the inmate where to pick one up, and would never refuse to give an

inmate the materials needed to file a grievance; and (b) inmate-grievance supervisor credibly

testified that "she would never have refused to file a grievance" and "if plaintiff filed . . .

grievances, they . . . would have been reflected in the [applicable] grievance log").

       Plaintiff also appears to argue that the administrative grievance process was

"unavailable" to her because "prison administrators thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at

644.[7]  (*See* Doc. 156 at 2.)  Plaintiff has had ample opportunities to make this argument earlier.

Indeed, she has filed several substantive briefs on the issue of exhaustion.  Plaintiff waited until

after the evidentiary hearing and after Defendants submitted their pre- and post-hearing

memoranda to argue this point.  More importantly, the argument is unsupported, as Plaintiff has

provided no factual detail to substantiate it.  Specifically, Plaintiff offers no facts, other than the

indistinct allegations discussed above, revealing what actions were taken by particular DOC staff

members to thwart her from using the grievance process provided for in Directive 320.01.  No

evidence was offered at the hearing, or any testimony elicited, on this issue.  Where there is no

evidence of "affirmative action by prison staff actually preventing prisoners from pursuing

administrative remedies," those remedies "are not unavailable under the PLRA."  *Grafton*,

783 F. App'x at 31 (citing *Ruggiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2006)); *see*

*Davis*, 2019 WL 498277, at *9 (granting summary judgment to defendants where "[p]laintiff

---

[7]  Plaintiff does not claim that administrative remedies were "unavailable" because the procedure was "so
opaque that it becomes . . . incapable of use." *Ross*, 578 U.S. at 643; (*See* Doc. 156 at 7).

offer[ed] no evidence that any particular officer thwarted his attempts to file his grievance or appeal"); *Veloz*, 339 F. Supp. 2d at 516 (holding plaintiff failed to exhaust where he offered "no evidence that any particular officer thwarted his attempts to file" grievances and instead "simply contend[ed] that the practice of destroying or misplacing grievances must have been the cause of his grievances being lost").

Accordingly, I find that Plaintiff failed to properly exhaust administrative remedies as required under the PLRA before filing a federal lawsuit related to prison conditions.

## IV.  Dismissal with Prejudice

"[C]ourts have generally dismissed claims *with* prejudice where the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is no longer able to cure the defect . . . . " *Massey v. City of New York*, 20cv5665 (GBD) (DF), 2021 WL 4943564, at *11 (S.D.N.Y. Aug. 30, 2021), *report and recommendation adopted*, 2021 WL 4459459 (Sept. 29, 2021), *aff'd*, 2021 WL 5234977 (Nov. 9, 2021); *see Thomas v. Kinderman*, 9:17-cv-00425 (DNH/TWD), 2017 WL 8293605, at *6 (N.D.N.Y. Dec. 4, 2017) ("[I]f a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile"), *report and recommendation adopted*, 2018 WL 1441336 (Mar. 22, 2018).  For example, the Second Circuit upheld the dismissal of a civil rights action with prejudice, when the time permitted for filing a grievance had expired.  *Felix v. Simon*, 303 F. App'x 21, 22 (2d Cir. 2008) (summary order).  The court reasoned that "dismissal with prejudice, when remedies are no longer available, is required in the absence of any justification for not pursuing such remedies."  *Id.* (internal quotation marks omitted); *see Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003) ("[I]n the absence of any justification for not pursuing available remedies, [prisoner's]

failure to pursue administrative remedies while they were available precluded his federal

lawsuits, and they were properly dismissed with prejudice." (footnote omitted)).

The time for Plaintiff to exhaust her administrative remedies has long expired, as more

than six years have passed since the date of the alleged assault in November 2016 that is the

subject of this litigation. Therefore, Plaintiff's claims should be dismissed with prejudice.

## V.    Other Pending Motions

Four months after the close of evidence on the exhaustion issue, Plaintiff filed a "Petition

for Declaratory and Extraordinary Relief" (Doc. 157) seeking a declaration that the doctrine of

qualified immunity was "unlawful," as well as a "Motion Challenging the Constitutionality of

the PLRA's Exhaustion Requirement (Doc. 158). This case has been pending for over five

years, and exhaustion has been the sole issue under consideration since before March 2021. (*See*

Doc. 118 at 9 (noting "the parties' agreement to limit discovery to Plaintiff's efforts to exhaust

her administrative remedies related to the November 2016 assault").) It is simply too late for

Plaintiff to assert a broad constitutional challenge to the very grievance process that was the

subject of extended discovery in this matter, culminating in the evidentiary hearing.

Furthermore, each of these filings fails on the merits. The Petition seeks a judgment

declaring the doctrine of qualified immunity unlawful and inconsistent with "conventional

principles of statutory interpretation." (Doc. 157 at 1.) Whether Defendants may claim qualified

immunity as a defense to the underlying claims has no relevance to the administrative exhaustion

issue, which has been the only issue under review for well over a year. Regarding Plaintiff's

Motion seeking a judgment declaring that the PLRA's exhaustion requirement is

unconstitutional, other than conclusory allegations that the PLRA violates "separation of powers

doctrine," "the Fifth and Fourteenth Amendments," and "equal protection of the laws," among

other constitutional provisions (Doc. 158 at 2–3), Plaintiff articulates no basis for the Court to

find the well-established PLRA exhaustion requirement unconstitutional on its face or as applied to Plaintiff. *See, e.g.*, *Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Woodford*, 548 U.S. at 88–89 ("The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law . . . [,] provid[ing] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (citation and internal quotation marks omitted)).

Finally, on December 27, 2022, Plaintiff filed a "Motion Requesting Additional Discovery and to Postpone Ruling on the Issue of Exhaustion." (Doc. 159.) In support of this request, Plaintiff asserts that Vermont DOC Commissioner Nicholas Deml acknowledged during a recent televised interview "shortcomings in the current VDOC grievance process and disclosed a plan to remedy these shortcomings by allowing incarcerated individuals to file grievances electronically starting in the spring of 2023." (*Id.* at 2.) As a result, Plaintiff seeks to conduct discovery "to obtain additional evidence of specific incidents to support their exhaustion claim." (*Id.*)

Plaintiff has not met the standard to warrant reopening of discovery at this very late stage in the proceedings. As an initial matter, the Court has no information as to the nature of the alleged "shortcomings" in the grievance process, and whether such shortcomings relate in any way to the exhaustion issues presented in this case. Second, to the extent that Commissioner Deml "acknowledged shortcomings in the current VDOC grievance process," it is not clear how current deficiencies are relevant to the grievance process Plaintiff experienced approximately six years ago. Finally, Plaintiff received ample opportunity to conduct discovery on exhaustion and related issues. As noted above, the Court amended the discovery schedule twice in this case to permit Plaintiff additional time to complete discovery and prepare for the evidentiary hearing.

(Docs. 96, 108.)  Plaintiff requested a third extension of the discovery schedule in January 2021. (Doc. 112.)  The Court denied the request, finding that Plaintiff had not demonstrated "good cause" under Fed. R. Civ. P. 16(b)(4) or "extraordinary circumstances" under Local Rule 26(a)(7).  (Doc. 118 at 6–7.)  Plaintiff's most recent request to conduct additional discovery comes long after the close of an extended period of discovery and the completion of an evidentiary hearing to address exhaustion issues.  During the course of discovery, Plaintiff had a full opportunity to develop the record concerning the handling of her grievances specifically and the functioning of the grievance process generally.  The undersigned has now considered the resulting factual record and recommended a disposition on the exhaustion issue.  The Court should decline Plaintiff's request to conduct additional discovery at this late stage.

## Conclusion

The record before the Court demonstrates that Plaintiff did not properly exhaust administrative remedies under the PLRA before filing her federal lawsuit.  Further, based on the evidence presented at the evidentiary hearing, the Court has no basis to deem the claim exhausted due to the unavailability of applicable grievance procedures.  Therefore, I recommend that the Court find that Plaintiff has failed to exhaust available administrative remedies.  As the time to exhaust has now expired, I recommend dismissal of Plaintiff's claims with prejudice.

For the reasons discussed above, I further recommend denying Plaintiff's Petition for Declaratory and Extraordinary Relief (Doc. 157), Motion Challenging the Constitutionality of the PLRA's Exhaustion Requirement (Doc. 158), and Motion Requesting Additional Discovery and to Postpone Ruling on the Issue of Exhaustion (Doc. 159).

Dated at Burlington, in the District of Vermont, this 5th day of January 2023.

/s/ Kevin J. Doyle
Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).